MINNIE BLOCH *vs.* LOUIS BUDISH & others.

Worcester. February 4, 1932. — April 16, 1932.

Present: RUGG, C.J., CROSBY, WAIT, SANDERSON, & FIELD, JJ.

*Equity Jurisdiction,* To reach and apply equitable assets. *Mortgage,* Of real estate: assumption of mortgage debt by grantee of mortgagor.

A deed of land subject to a mortgage previously given by the grantor contained a provision that the grantee assumed and agreed to pay the mortgage. Subsequently the mortgagee foreclosed the mortgage. There was a deficiency after the foreclosure. Later the mortgagor was adjudicated a bankrupt and was granted a discharge. The mortgagee's claim for the deficiency was listed among the debts of the bankruptcy estate. In a suit in equity by the mortgagee against the mortgagor and his grantee to reach and apply in satisfaction of such claim the mortgagor's right to require the grantee to perform the agreement stated in the deed, it was *held,* that

(1) The suit, as a suit to reach and apply under G. L. c. 214, § 3 (7), could not be maintained, since the indebtedness of the defendant mortgagor to the plaintiff could not be established against that defendant owing to his discharge in bankruptcy, even though the debt itself were not extinguished by the discharge;

(2) Although, as between the defendants, the defendant grantee by accepting the deed became bound to pay the mortgage debt and became the principal with respect thereto, leaving the defendant mortgagor as a surety with respect thereto, the defendant mortgagor, having been relieved in bankruptcy of his liability to the plaintiff for the indebtedness, could not require the defendant grantee, under the agreement in the deed, to indemnify or exonerate him, and the plaintiff stood no better with respect to the defendant grantee than did the defendant mortgagor;

(3) It could not be said that the defendant grantee had in his hands property which in equity and good conscience belonged to the plaintiff so as to enable the plaintiff to maintain proceedings against the defendant grantee without. there being privity of contract between them;

(4) The suit could not be maintained.

BILL IN EQUITY, filed in the Superior Court on October 21, 1930, and described in the opinion.

The suit was heard by *F. T. Hammond,* J. Material facts found and a final decree ordered by the judge are described in the opinion. Such final decree was entered by

order of *Whiting,* J.  The defendants Keating and Halnon, executors, appealed.

*C. W. Proctor,* for the defendants Halnon and another, executors.

*A. M. Hillman,* for the plaintiff.

SANDERSON, J.  This is an appeal from a final decree allowing a mortgagee to reach and apply in satisfaction of a balance due on a mortgage debt the mortgagor's right to require the grantee of the property, who purchased it from the mortgagor subject to the mortgage, to carry out his agreement to assume and pay the mortgage debt.  The bill was filed October 21, 1930.

The prayers asked that the indebtedness of the plaintiff against Louis Budish and the executors of the grantee arising from the deficiency in the foreclosure of the mortgage be established; that the plaintiff be given any rights Budish may have against the executors of the grantee under the deed; that the executors be ordered to pay the amount found due the plaintiff from Budish upon the note; and that the plaintiff be allowed to reach and apply in satisfaction of her claim against Budish any sums the court may find to be due from the executors of the grantee to Budish.  The answers of the executors set up the defence of the pendency of the bankruptcy proceedings of Budish and that the rights set forth in the bill, if any, are no longer vested in the plaintiff but enure to the benefit of the trustee in bankruptcy of Budish.  The answer of Budish alleged the filing by him of a petition in bankruptcy listing as a creditor the plaintiff; that the claim of the plaintiff is dischargeable in bankruptcy, and in it he pleads his discharge or the pendency of his bankruptcy as a defence to the suit.

The facts found, briefly summarized, are that on February 8, 1928, the plaintiff conveyed to the defendant Louis Budish a tract of land with the buildings thereon and received in partial consideration therefor a note of Budish secured by a first mortgage upon the premises conveyed, payable in semiannual instalments of $50 and the balance at the end of five years payable on demand.  On March 13, 1928, Budish conveyed the premises in question to Julia A.

Barrett by deed containing the following provision: "Said premises are conveyed subject to a first mortgage in one Bloch in the sum of $9100.00 . . . which the grantee herein named assumes and agrees to pay." On January 2, 1930, Julia Barrett died, and on February 10, 1930, the defendants Keating and Halnon were duly appointed and qualified as executors of her will. The plaintiff will be referred to as the mortgagee, Budish as the mortgagor, and Barrett and her executors as the grantee, unless they are otherwise designated. In February, 1930, default was made in the payments of principal and interest then due on the mortgage. The unpaid balance of principal at this time was $8,950. Neither the note nor the mortgage provided that the balance of the debt should become due upon default in payment of any instalment. On June 10, 1930, the premises were sold by the mortgagee for breach of the condition of the mortgage and purchased by her for the sum of $4,721. Prior to foreclosure notice was served upon all the defendants herein that the mortgage was about to be foreclosed, that the mortgagee would look to them for any deficiency and each of the defendants received a copy of the foreclosure advertisement and was informed of the time and place of sale. On June 17, 1930, the mortgagor executed a release under seal to the defendants Keating and Halnon, as executors, purporting to release and discharge the estate of Barrett from all rights that he then had or ever had against her on account of the assumption of the mortgage debt in question, and received a specified sum for such release, one half of which was paid by the estate of Barrett and the other half by the Booth Realty Company, to which corporation Barrett had conveyed the premises in question at some time between March 13, 1928, and January 2, 1930.

The trial judge found that in executing this release the mortgagor intended to hinder and delay the mortgagee in collecting the mortgage debt and that the other defendants knew this. He found that the release was fraudulent as to the mortgagee.

On November 17, 1930, the mortgagor filed a petition in bankruptcy and on the same day was adjudicated a bank-

rupt, and on February 25, 1931, he was granted a discharge in bankruptcy. The mortgagee's claim was included among the debts scheduled, but she filed no proof of claim.

A decree was entered ordering the executors of the grantee to pay the mortgagee the instalments of the mortgage debt which were overdue at the date when the bill was filed. The discharge of the mortgagor in bankruptcy pleaded in the case made it impossible to establish any indebtedness of the mortgagor to the mortgagee in these proceedings, *Federal National Bank* v. *Koppel*, 253 Mass. 157, and no such indebtedness on his part was referred to in the decree.

The first question is whether a bill to reach and apply under G. L. c. 214, § 3 (7), is available to a creditor when no indebtedness of the debtor to the creditor can be established in the suit. There is nothing in the statute to indicate that the proceeding could be made available to deprive a debtor of the full benefit of a defence like the statute of limitations, and it cannot be so used as to deprive the debtor of the full protection of a discharge in bankruptcy. In *Chapman* v. *Banker & Tradesman Publishing Co.* 128 Mass. 478, 479, the court referred to a bill to reach and apply under Gen. Sts. c. 113, § 2, cl. 11, as "in the nature of an equitable attachment." The purpose of the Legislature in enacting the original statute (St. 1851, c. 206), was to permit creditors who had been unable to satisfy their judgments to come into equity for the purpose of reaching property which could not be taken on execution at law. *Pettibone* v. *Toledo, Cincinnati & St. Louis Railroad*, 148 Mass. 411. In *H. G. Kilbourne Co.* v. *Standard Stamp Affixer Co.* 216 Mass. 118, 122, the remedy was referred to as in the nature of an equitable trustee process. In *Consolidated Ordnance Co.* v. *Marsh*, 227 Mass. 15, 22, 23, the court said that a bill to reach and apply was an attempt to secure "the extraordinary advantages of equitable attachments," that it was an attempt to use "the extraordinary process to reach and apply the property of a debtor provided by our statute, which does not prevail generally and is not a part of ordinary equitable jurisdiction . . . ." and "That

statute was designed to afford its unusual benefits to a creditor who invokes the jurisdiction of our courts to establish his debt." The purpose has also been said to be to provide in equity in aid of the law a remedy analogous to that of creditors' suits under general equity jurisdiction. *Orange Hardware Co.* v. *Ryan,* 272 Mass. 413, 416. It would be an unwarrantable extension of the scope of G. L. c. 214, § 3 (7), to permit bills to reach and apply to be maintained where liability for the debt to be collected cannot be established against the debtor because of his discharge in bankruptcy even though the debt itself is not extinguished by that discharge.

In *Keller* v. *Ashford,* 133 U. S. 610, 623, the court said: ". . . if one person agrees with another to be primarily liable for a debt due from that other to a third person, so that as between the parties to the agreement the first is the principal and the second the surety, the creditor of such surety is entitled, in equity, to be substituted in his place for the purpose of compelling such principal to pay the debt." See *Forbes* v. *Thorpe,* 209 Mass. 570, 582; *Evans, Coleman & Evans, Ltd.* v. *Pistorino,* 245 Mass. 94, 99–100.

But the conclusion reached by the trial judge cannot be upheld on the ground that the mortgagor had a right to compel the grantee to pay the mortgage debt and the mortgagee may avail herself of the right in equity by asserting this right of the mortgagor against the grantee. As between the mortgagor and grantee the grantee stood in the relation of principal to the mortgage debt and the mortgagor as surety. *Codman* v. *Deland,* 231 Mass. 344. *Peterson* v. *Abbe,* 234 Mass. 467. By accepting the deed the grantee became bound to the mortgagor by a promise to pay the mortgage debt. *Costa* v. *Sardinha,* 265 Mass. 319. The purpose of the grantee's agreement was to relieve the mortgagor from liability on his mortgage indebtedness. See *Muhlig* v. *Fiske,* 131 Mass. 110. The mortgagor, having been discharged in bankruptcy from his liability for the mortgage debt and being under no liability to pay it, could not require the grantee to indemnify or exonerate him under the agreement in the deed. In *Peterson* v. *Abbe,* 234 Mass.

467, the court held that the measure of damages for breach of contract by a grantee upon his contract of indemnity is the actual loss sustained by the mortgagee. If a surety pays unnecessarily he is not entitled to indemnity. Williston on Contracts, § 1283. The mortgagee standing in the place of the mortgagor and undertaking to assert his rights could have no greater rights than remained in the mortgagor. *Keller* v. *Ashford*, 133 U. S. 610, 625. *Crowell* v. *Hospital of Saint Barnabas*, 12 C. E. Green, 650, 656. *Russell* v. *LaRoque*, 13 Ala. 149.

The facts in the case at bar do not bring it within the rule stated in *Mellen* v. *Whipple*, 1 Gray, 317, 322, that a plaintiff may sue in certain cases without showing privity of contract with the defendant where the defendant has in his hands money which in equity and good conscience belongs to the plaintiff. If the grantee had at any time held property to which such a rule could apply, it was the land which the plaintiff now has as a result of the foreclosure. See *Coffin* v. *Adams*, 131 Mass. 133, 136; *Forbes* v. *Thorpe*, 209 Mass. 570, 581. In *Rice* v. *Sanders*, 152 Mass. 108, 110, the court said, in substance, that where the grantee assumes the mortgage the relation of the parties and the nature of the contract are the same as if the entire consideration had been paid to the grantor and he had then entrusted a sum sufficient to pay the mortgage to the grantee upon his promise to take it and pay it to the mortgagee. This statement cannot mean that the grantee, who received no money, should be treated as though he in fact had money which in equity and good conscience belongs to the mortgagee. The general rule, that a person who is not a party to a contract and from whom no consideration moves may not sue thereon as a direct proceeding in equity, applies in this Commonwealth. *New England Structural Co.* v. *James Russell Boiler Works Co.* 231 Mass. 274. *Central Supply Co.* v. *United States Fidelity & Guaranty Co.* 273 Mass. 139, 144. The promise of the grantee to the mortgagor cannot be considered as property held in trust for the mortgagee. The case is distinguishable in its facts from *Forbes* v. *Thorpe*, 209 Mass. 570, 582, and *Evans, Coleman & Evans, Ltd.* v. *Pistorino*, 245

Mass. 94, 99–101, for the reason among others that in the case at bar the mortgagor's discharge in bankruptcy materially affected the rights of the parties.

Because of the conclusion reached it is unnecessary to consider the decision of the trial judge as to the release from the mortgagor to the executors of Barrett and as to the original right of the mortgagor to require the grantee to pay the mortgage debt passing to his trustee in bankruptcy.

The decree must be reversed and a decree entered dismissing the bill with costs.

*So ordered.*